**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMED SAHEED, | Case No. 1:15-cv-00848-SMS |
| Plaintiff, | |
| v. | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Mohammed Saheed seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act"). The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument to the Magistrate Judge. Following a review of the record and applicable law, the Court affirms the decision of the Administrative Law Judge ("ALJ").

I.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

A.  *Procedural History*

Plaintiff applied for DIB on October 11, 2013, and for SSI on August 28, 2013, alleging

---

[1] The relevant facts herein are taken from the Administrative Record ("AR").

1

disability beginning on June 15, 2013.  The Commissioner denied Plaintiff's claims on April 8, 2014, and upon reconsideration on June 4, 2014.  AR 110-111, 142-143, 239, 243.  Plaintiff then requested a hearing before an ALJ.  AR 172.

On January 14, 2015, Plaintiff appeared and testified before ALJ Cynthia Floyd.  Also at the hearing were Plaintiff's counsel and an impartial vocational expert ("VE").  AR 28.  In a written decision dated February 6, 2015, the ALJ found Plaintiff not disabled under the Act.  AR 22.  On April 9, 2015, the Appeals Council denied review of the ALJ's decision, which thus became the Commissioner's final decision, and from which Plaintiff filed a timely complaint.  AR1; Doc. 1.

B.  *Factual Background*

The Court will not recount in detail all the facts of this case, discussing only what is relevant to this appeal.

1.  Plaintiff's Written Testimony

In his first disability report from October 2013, Plaintiff stated the following conditions limited his ability to work: arthritis, depression, back injury, lumbar disc bulge, lumbar spinal stenosis, high blood pressure, and high cholesterol.  AR 288.  Six months later, in a second disability report, Plaintiff claimed worsening pain beginning in March 2014.  AR 351.  He could not be active due to the pain and side effects of his medications, and struggled with some personal care issues such as not knowing when to use the restroom, and forgetting to eat or clean himself.  AR 354.

Plaintiff's work history for the past fifteen years included work as a newspaper carrier, payroll accountant, and truck driver.  As a truck driver, a job he maintained from May 2009 to August 2013, each day, Plaintiff stood and climbed for one hour each; sat for nine hours; reached and handled/grabbed big objects for half an hour each; and wrote, typed or handled small objects for one hour.  He frequently lifted twenty-five pounds, with fifty pounds at most.  AR 324-325.

Plaintiff completed an Adult Function Report in November 2013.  He was, at the time, living

with his family. The disc bulge in his back was very severe such that he was "unable to sit, stand, walk or lay down" for long periods of time. He was "unable to do anything" because he felt drowsy or dizzy most of the time and had "chronic pain all [the] time." He took sleeping pills as he could not sleep at times due to the pain and needed help with personal care. He could not prepare meals or do any house and yardwork due to the pain. He did not go outside alone, shop, drive, handle money or engage in any hobbies because of the pain and medication side effects. He would only go out to appointments at the hospital. He had no problems getting along with others. He could lift one to two pounds; squat, bend, stand, walk, sit kneel and climb for a few minutes; and pay attention for five to ten minutes. He could only walk for a few steps before needing to rest. He could not handle changes in routine or stress well. He used, at "all times" a walker and wheelchair, both of which were prescribed by a physician a year ago. Plaintiff's medications included: Cymbalta, Gabapentin, Diclofenac, Ranitidine, Norco, Baclofen, Pravachol, Zolpidem, Ibuprofen, and Enalapril. Except for Ranitidine, these medications caused drowsiness and/or dizziness. AR 340-348.

2. <u>Third Party Adult Function Report</u>

Raziya Saheed, Plaintiff's wife, completed a Third Party Adult Function Report in November 2013. Ms. Saheed had known Plaintiff for twenty-one years. She stated that Plaintiff's injuries limited his ability to walk, stand, sit, shop, and work. He could not sleep without sleeping pills, needed someone to help with his personal care, and could not sit, stand, and bend for long periods of time. He did not prepare meals or do any chores due to the medication side effects. He did not go outside due to the pain and because his knees and legs would "lock." He did not drive as he could not sit for very long. He did not handle money as the medications caused him to become confused at times. He no longer engaged in hobbies, social activities, and goes to the hospital only. Plaintiff's pain and depression made it difficult for him to get along with others, though he could get along very well with authority figures. He could lift one to two pounds, and squat, sit, bend, stand and walk for

less than a few minutes.  He could not climb stairs and could walk less than a few feet before needing to rest.  He could get along with others and follow instructions for less than five minutes due to the pain and depression.  He could pay attention for only a few minutes and follow spoken instructions well enough until he gets drowsy.  He could not handle changes in routine or stress well and gets depressed very easily.  Plaintiff's pain made him angry easily.  He often used a walker and wheelchair, which were prescribed a few months ago.  Ms. Saheed listed the same medications and side effects found in Plaintiff's Adult Function Report.  AR 313-320.

3. <u>Medical Evidence</u>

The bulk of Plaintiff's medical records came from Fresno Shields Medical Center (FSMC), Central Valley Pain Management (CVPM), and Community Regional Medical Center and Clinics (CRMCC).  Beginning with FSMC, progress notes show Plaintiff made nearly monthly visits from January 2011 to November 2013 for complaints of leg pain, back pain, stomach pain, fatigue, and body aches.  AR 437-447, 399-420.  At the same time, from February 2012 to January 2013, Plaintiff received pain management treatment from J.R. Grandhe, M.D., at CVPM.  AR 379-397.

Records from CRCMC show Plaintiff underwent spinal surgery with Mark Levy, M.D. in early December 2013.  AR 617.  An MRI taken about three weeks later revealed a generally normal lumbar vertebrae, though with some mild to moderate spinal canal stenosis and degenerative disease at the individual disc levels.  Impressions of the MRI were: "Minimal degenerative disease and some postoperative changes noted at the 5-1 level as discussed above.  Some neural foraminal narrowing.  Some spinal canal stenosis . . . .  No discitis.  No paravertebral collection seen."  AR 605.  Around the same time, Plaintiff underwent a whole body bone scan with the following impressions: "[T]wo small foci of mild increased bony uptake . . . most likely representing areas of mild facet hypertrophic degenerative joint disease."  AR 922.

Additional MRIs were taken in July and August 2014.  The July MRI impressions were mild degenerative changes with no significant changes from Plaintiff's December 2013 MRI.  AR 852.  And the August MRI impressions were: mild to moderate central stenosis with facet and ligamentum flavum hypertrophy at L3-4; and mild central canal narrowing with facet hypertrophy at L4-5.  AR 838-839.

In the months after his spinal surgery, Plaintiff continued to report low back and leg pain (right leg worse than left).  AR 690, 707, 787.  Dr. Levy recommended facet injections and physical therapy.  Plaintiff had been receiving epidural steroid injections, which he claims did not help as they were infrequent.  Based on new x-rays of the lumbar spine, Ian Johnson, M.D., did not recommend further surgery.  AR 787.

Frederick K. Comrie, M.D., at LAGS Spine and Sportscare, first treated Plaintiff in January 2014.  Plaintiff received medications and numerous epidural injections to help alleviate the low back pain.  During visits in April, May and June 2014, Plaintiff complained of constant low back pain which radiated to the legs.  He reported that with treatment medications, he could engage in activities including bathing, dressing, preparing food, and cleaning the house.  His home exercise routine consisted of "aerobic (walking) for 30 minutes."  He reported mild stress and depression, but was able to get undisturbed sleep at night and "awakens rested."  AR 547-556, 568-573, 577-591.  In September 2014, Dr. Comrie completed a physical medical source statement, a check-the-box and fill-in-the blank form.  Therein, he found Plaintiff: (1) could not walk any city block without rest or severe pain; (2) could sit and stand for five to ten minutes at one time; (3) could sit and stand/walk a total of less than two hours in an eight-hour workday; (4) required a job with a sit-stand option and permits periods of walking around and multiple unscheduled breaks; (5) did not need a cane or hand-held device for occasional standing/walking, but required occasional use of a wheelchair; (6) could rarely lift and carry less than ten pounds, twist, crouch/squat and climb stairs; (7) never stoop/bend

and climb ladders; (8) would be off task twenty-five or more percent of a typical workday; (8) was incapable of even low stress work; and (9) likely to be absent for four or more days per month due to his impairments.  AR 562-563.

Also in September 2014, Brian H. Clague, M.D., completed a similar physical medical source statement.  He concluded Plaintiff: (1) had emotional conditions—depression and stress—which contributed to the severity of his symptoms and functional limitations; (2) could not walk any city block without rest or severe pain; (3) could sit and stand for five to ten minutes at one time; (4) could sit and stand/walk a total of less than two hours in an eight-hour workday; (5) required a job with a sit-stand option; (6) needed periods of lying down; (7) needed to walk for one to three minutes every ten to twenty minutes; (8) needed to take unscheduled breaks every thirty minutes to an hour, lasting one to two hours each time; (9) needed his legs elevated with prolonged sitting; (10) required occasional use of a walker or wheelchair; (11) could rarely lift and carry less than ten pounds; (12) could never twist, stoop, crouch/squat, and climb stairs and ladders; and (13) had significant limitations with reaching, handling and fingering.  AR 560-561.  On the same day, Dr. Clague's progress notes indicated Plaintiff exhibited an antalgic gait and poor posture, but otherwise generally normal physical and neurological results upon examination.  AR 823-824.  Progress notes from the Joint Spine and Pain Treatment Center show Plaintiff's complaint of lower back pain persisted into November 2014.

With regard to Plaintiff's mental conditions, James P. Murphy, Ph.D., completed a psychological evaluation on February 2014.  Plaintiff arrived at the evaluation with a wheelchair, which he reported was unprescribed, and stated that "he can walk but the wheelchair ma[de] life easier[.]"  Plaintiff appeared "overmedicated" and his wife confirmed that "he had taken his pain medications twenty minutes" prior.  Plaintiff had taken Baclofen, Hydrocortisone, Methadone, gabapentin and Cymbalta.  He reported being prescribed psychotropic and pain medications.  While

working as an accountant, Plaintiff stole from his employer and was sentenced to jail for six months. He was not treated for depression during his time in jail.

Dr. Murphy observed Plaintiff sit through the hour-long psychiatric interview "without signs of discomfort." Dr. Murphy concluded:

> *[Plaintiff's] ability to function in the real world appears to be hampered by his physical symptoms not depression.  There were no observed symptoms to support a DSM-IV-TR diagnosis of depression but considerable pain behavior was observed.  This individual is psychologically capable of performing Simple Repetitive Tasks (SRT) on a regular basis but not complex tasks.*

AR 524-528 (emphasis in original).

As part of the disability determination, two state agency medical consultants, J. Wright, M.D., and A. Nasrabadi, M.D., reviewed Plaintiff's records. Dr. Wright reviewed Dr. Murphy's evaluation and concluded that evidence supports a light RFC before his back surgery and a return to light RFC by December 2014. Dr. Wright noted credibility concerns given the "inconsistent use of [an] unprescribed wheelchair" at the consultative examinations. He found Plaintiff: (1) could lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) could sit, stand and/or walk about six hours in an eight-hour workday; (3) could never climb ladders, ropes or scaffolds but may frequently climb ramps and stairs; (4) could occasionally balance, stoop, kneel, crouch and crawl; and (5) must avoid concentrated exposure to workplace hazards. Dr. Wright noted that the evidence "does not support medical necessity" for an assistive device. AR 105-107. In June 2014, Dr. Nasrabadi affirmed the finding of light RFC. AR 139.

4. <u>Hearing Before Administrative Law Judge</u>

Plaintiff was, at the time of the hearing, living with his wife and daughter. AR 32. He did not have a driver's license because of outstanding tickets. AR 34. He stopped working in 2013 due to back pain which traveled to his legs. AR 37.

Plaintiff testified that despite the surgery in December 2013, his condition had worsened.

The ALJ noted Plaintiff "appear[ed] to be in discomfort" as he kept "standing and sitting down" throughout the hearing. Plaintiff explained that prolonged sitting caused back pain at the surgical site. He was taking pain medications, including morphine, but did not find them helpful. The morphine minimized the pain for two hours at most. He could stand for no more than fifteen minutes before getting dizzy, a side effect of the medication. To relieve the pain, he would lie or sit down, the former being his most comfortable position. In an eight-hour day, Plaintiff would lie down for about six hours. He could walk for no more than five minutes before needing a break and had been using a prescribed walker since June or July of 2014. When asked who prescribed the walker, he could not recall.

Plaintiff could lift less than five pounds. He could not bend over to pick up something. Aside from bathing, he relied on his wife for the cooking and everything else. He struggled with sleeping at night, getting no more than one to two-hour intervals of sleep. This, in turn, negatively affected his mood during the day. When asked if his other medications caused side effects, Plaintiff replied, "No." AR 38-46.

Jose Chaparro, the VE, testified and classified Plaintiff's past work to include newspaper carrier, accounting clerk, payroll clerk, and tractor trailer truck driver. The VE opined that other than the newspaper carrier, the other positions had transferable skills. He then responded to a number of hypothetical questions from the ALJ and Plaintiff's counsel. AR 50-60.

5. ALJ's Decision

A claimant is disabled under Titles II and XVI if he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months. 20 C.F.R. §§ 404.1505(a), 416.905(a). To encourage uniformity in decision making, the

Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[2]

In his written decision, the ALJ found that at step one, Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 15, 2013. At step two, Plaintiff had the following severe impairments: lumbar degenerative disc disease, degenerative joint disease, status post microdiscectomy with no response, bilateral sacroiliac arthropathy, lumbar radiculopathy, and arthritis. At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff had the RFC to perform light work, except he is limited to: lifting and carrying twenty pounds occasionally and ten pounds frequently; standing and walking six hours in an eight-hour workday with normal breaks; sitting six hours total in an eight-hour workday; never climbing ladders, ropes or scaffolds but may frequently climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; avoiding concentrated exposure to workplace hazards such as fast moving unprotected machinery, working at unprotected heights and traversing uneven terrain; and alternating between sitting and standing every twenty minutes for one minute with the option to occasionally use an assistive device such as a walker. At step four, Plaintiff was capable of performing his past job of accounting clerk, payroll clerk and newspaper carrier. Consequently, the ALJ concluded Plaintiff was not disabled as defined under the Act since June 15, 2013 through the date of the decision. AR 13-21.

---

[2] "In brief, the ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work. The claimant bears the burden of proof at steps one through four." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

## II.  DISCUSSION

A. *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner.  However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted).  "If the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010).  But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Moreover, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006).

B. *Analysis*

Plaintiff raises three issues on appeal.  He contends the ALJ: (1) improperly rejected the opinions of Drs. Comrie and Clague; (2) erred in giving great weight to the opinions of Drs. Wright and Nasrabadi; and (3) provided legally insufficient reasons for discrediting Plaintiff's testimony.

10

1. <u>Drs. Frederick Comrie and Brian H. Clague</u>

In her discussion of Drs. Comrie's and Clague's opinions, the ALJ stated in relevant part:

> The undersigned gives the assessments of Drs. Clague and Comrie little weight because they are too extreme and exaggerated as to cast doubt on their reliability as a whole.  In addition, Dr. Clague did not have a longitudinal relationship with the claimant and only began treating the claimant in September 2014.  Furthermore, the opinions are inconsistent with the medical evidence of record, particularly diagnostic studies that showed mild to moderate abnormalities.  Moreover, no physician recommended additional surgery and the claimant reported activities of daily living that were not consistent with a disabled individual.

AR 18.  Plaintiff takes issue with all of the ALJ's expressed reasons, which the Commissioner asserts are substantially supported by the record.

Plaintiff contends the ALJ's reasoning that the opinions of Drs. Comrie and Clague are "inconsistent with the medical evidence," lacks merit.  Citing to the December 2013, July 2014 and August 2014 MRIs of the lumbar spine, Plaintiff asserts "the ALJ's characterization of the MRI[]s is merely his lay opinion" and therefore improper.  Doc. 12, p. 8-9.  The record, however, belies Plaintiff's assertion.  It is settled that an ALJ may not substitute his own medical judgment for that of physician.  *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."); *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician, especially when that physician is the regular treating doctor for the disability applicant.") (citations omitted); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("an ALJ is not free to set his own expertise against that of a physician who presents competent evidence"); *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("an ALJ cannot arbitrarily substitute his own judgment for competent medical evidence") (internal quotations and citation omitted).  That, however, was not the case here.

11

In concluding the "diagnostic studies . . . showed mild to moderate abnormalities," the ALJ correctly recounted, nearly verbatim, the impressions and/or findings of the attending physician who reviewed the December 2013 whole body scan, the December 2013, July 2014 and August 2014 MRIs. His characterization of the evidence is consistent with the record and not a product of his lay opinion. Even Plaintiff's own summary of the MRIs indicate that the degree of any abnormality was generally mild and, at most, moderate. And while pointing out that the ALJ's account did not include two findings from the July 2014 MRI—an annular fissure and flattening of the central thecal—Plaintiff provides no explanation as to how this undermines the ALJ's conclusion, given that overall impressions of abnormalities were mild to moderate at most. Additionally, there is inconsistency within Dr. Clague's opinions. His progress notes, made on the same day he completed the medial source statement, did not support the kind of limitations set forth in the latter. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming the ALJ's rejection of a treating physician's opinion which was internally inconsistent and too extreme to be plausible). Plaintiff's contention here is therefore unavailing.

Plaintiff next contends the ALJ ignored contrary evidence in discounting the opinions of Dr. Comrie and Clague. He essentially accuses the ALJ of cherry-picking the evidence. Indeed, his Adult Function Report states he could not prepare meals or do any house and yardwork due to the pain. But Plaintiff ignores the statements he made to Dr. Comrie in April, May and June 2014—that with treatment medications he could bathe, dress, prepare food, clean the house, and exercised by walking for thirty minutes. And where it is the ALJ's job to weigh conflicting evidence, Plaintiff has not shown why the ALJ could not find that Plaintiff's statements to Dr. Comrie, made months after the Adult Function Report, undermined the finding that Plaintiff could rarely and/or never engage in postural activities, as opined by Drs. Comrie and Clague. *See Key v. Heckler*, 754 F.2d 1545, 1550 (9th Cir. 1985) ("the ALJ has the power to weigh conflicting evidence"). Moreover, this

is only one of multiple reasons the ALJ expressed and the Court has already found that the ALJ's reasoning concerning inconsistencies with the medical record is supported by substantial evidence. *See Jordan v. Colvin*, 603 F. App'x 611 (9th Cir. 2015) ("Even if some of the ALJ's reasons for discounting their opinions were not valid, any error was harmless in light of the valid reasons the ALJ provided.") (citation omitted).[3]

Plaintiff's other contentions also suffer from the same fate. That is, even if he could convincingly show, which he has not, that no merit lies with the ALJ's other reasons—the physicians' opinions were too extreme and exaggerated, no physician recommended additional surgery, and no longitudinal relationship between Plaintiff and Dr. Clague—they are not the ALJ's only asserted reasons. The ALJ therefore did not improperly reject the opinions of Drs. Comrie and Clague.

### 2. Drs. J. Wright and A. Nasrabadi

Plaintiff contends the ALJ erred in giving great weight to the opinions of Drs. Wright and Nasrabadi, both of whom were nonexamining physicians. He asserts their opinions are unsupported by substantial evidence because despite their conclusions, which were made "only months" after Plaintiff's back surgery, he was on pain medication and required injections to alleviate the ongoing pain. Additionally, Plaintiff contests the physicians' questioning of his credibility based on the use of an unprescribed wheelchair. Doc. 12, pp. 12-13. The Commissioner avers the record supports the opinions of Drs. Wright and Nasrabadi with regard to the wheelchair. Doc. 19, p. 13.

As discussed, Dr. Wright opined Plaintiff should be at the light RFC level by December 2014, one year after his back surgery. Dr. Nasrabadi agreed. Additionally, Dr. Wright was concerned about Plaintiff's use of an unprescribed wheelchair and concluded there was no medical

---

[3] This unpublished decision is citable under Rule 32.1 of the Federal Rules of Appellate Procedure. *See also* 9th Cir. R. 36–3(b).

13

need for one. After correctly recounting the physicians' opinions, the ALJ stated in pertinent part:

> The undersigned gives the State agency physical assessments great weight because they are consistent with the medical evidence as a whole. For example, diagnostic studies showed merely mild to moderate abnormalities. In addition, physical examinations showed some decreased ranges of motion of the lumbar spine and positive straight leg raising tests, but reflexes, sensation, and motor strength were generally normal. However, the undersigned finds it appropriate to include environmental restrictions and allow the claimant to alternate between sitting and standing because of mild to moderate stenosis demonstrated by diagnostic images. *In addition, occasional use of a walker is appropriate since the physical examinations occasional showed an abnormal gait.*

AR 18-19 (emphasis added).

As an initial matter, Drs. Wright and Nasrabadi opined that Plaintiff would have a light RFC approximately one year, not just a few months, after his surgery. But more importantly, it would be error for the ALJ to find that the opinions of Drs. Wright and Nasrabadi were unsupported simply because they were made four and six months after Plaintiff's back surgery, when the record in fact supports their opinions. *Brumfield v. Astrue*, 281 F. App'x 681, 683 (9th Cir. 2008) ("Reports of a non-examining advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.") (citation omitted). That Plaintiff continued to experience pain which required medications and injections does not, without more, undermine the physicians' opinions.

With regard to the use of a wheelchair, the Court finds Plaintiff's position perplexing. As evident in her decision, the ALJ did not blindly adopt the physicians' opinions. She found additional restrictions appropriate and included occasional use of an assistive device as part of Plaintiff's ultimate RFC. The ALJ therefore did not adopt the opinion that no assistive device was needed. To the extent that Plaintiff takes issue with the physicians' concern about his credibility based on the use of a wheelchair, the record shows their concern was not unfounded given the inconsistencies. Specifically, Plaintiff reported using a wheelchair at all times in his Adult Function Report, but his

wife stated he used it often, and Plaintiff himself later told Dr. Murphy that "he can walk but the wheelchair ma[de] life easier." Plaintiff also reported in his Adult Function Report that the wheelchair was prescribed a year ago, but later told Dr. Murphy that the wheelchair was not prescribed, and told the ALJ at the hearing he had been using a prescribed walker since June or July 2014.

### 3. Plaintiff's Credibility

Plaintiff contends the ALJ erred in his credibility findings by failing to provide clear and convincing reasons for discrediting Plaintiff. Doc. 12, pp. 13-17. The Commissioner avers the ALJ properly found Plaintiff partially credible and that substantial evidence supports her findings. Doc. 19, pp. 12-15.

As set forth under the Act, a claimant's statements about pain or other symptoms will not alone establish disability. *Id*. at § 416.929 (2011). "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quotations omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1014-15; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir.2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

> A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.

15

> General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (internal quotations and citations omitted); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted). Factors an ALJ may consider include: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.*. The ALJ must also give consideration to the factors enumerated in SSR 96-7p.[4]

---

[4] Social Security Ruling 96-7p states, in relevant part:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

16

Because no evidence suggests Plaintiff was malingering, the ALJ was required to provide specific, clear and convincing reasons for rejecting the statements about pain. Here, the ALJ concluded:

> As for the claimant's credibility, the [ALJ] finds that the allegations were partially credible but not to the extent alleged. The claimant described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant reported he could bathe and dress himself, as well as prepare meals, and clean the house.
>
> The claimant's credibility is further undermined by the diagnostic and other objective medical evidence, which failed to show a physiological basis for the extreme pain and limitation alleged. The diagnostic showed mild to moderate abnormalities. In addition, the claimant has no history of psychiatric hospitalizations, no history of suicide attempts, no history of outpatient treatment, no history of psychotherapy, and no history of psychosis or manic episodes. Further weakening the claimant's credibility was the obvious overmedication during the psychological medical examination.

AR 19. She did not state with specificity which symptom testimony she found not credible. This was error. But under the circumstances, the error was harmless.

Elsewhere in her decision, the ALJ recounted Plaintiff's allegations that he could not work "due to . . . low back pain, arthritis, depression, back injury, high blood pressure, and high cholesterol, as well as lumbar spine disc bulges, spinal canal stenosis, and disc height loss." She recounted his Adult Function Report, wherein he reported being able to "walk only a few steps, lift one to two pounds, and pay attention for a mere five to ten minutes," and needed a "walker or wheelchair to ambulate." AR 16. The ALJ therefore recognized Plaintiff's alleged symptoms and her subsequent discussion reflects the reasons why she found him not entirely credible.

---

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

17

The ALJ essentially set forth four reasons which cast doubt on Plaintiff's credibility: (1) his activities of daily living, (2) the diagnostic results and objective medical evidence, (3) no history of psychiatric problems, and (4) the fact that he was overmedicated during the psychological evaluation with Dr. Murphy.  Most of the ALJ's reasons here find substantial support in the record and are specific, clear and convincing.  First, as discussed, Plaintiff's most recent statements about his daily activities included telling Dr. Comrie that with treatment medication Plaintiff could bathe, dress himself, prepare food, and cleaning the house; and engage in aerobic exercise involving walking for 30 minutes.  Second, the diagnostic studies showed abnormalities which were generally mild to moderate.  Third, Dr. Murphy found Plaintiff's symptoms did not support a diagnosis of depression. He also found Plaintiff had no discomfort sitting through the hour-long psychiatric interview. Collectively viewed, these evidence betray the claims of one who could walk for only a few steps, lift no more than two pounds at a time, and pay attention for no more than ten minutes at a time.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.") (quotations and citation omitted).  Plaintiff has not pointed to objective medical evidence which supports the degree of limitations alleged.

 Thus, while the Court is unpersuaded by one of the ALJ's reasons—that a lack of psychiatry problems translates to a lack of credibility—it is satisfied that the ALJ has articulated other specific, clear and convincing reasons for finding Plaintiff only partially credible.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that even if an ALJ's reason(s) for finding adverse credibility is invalid, such error is harmless if the other remaining reasons are adequately supported by substantial evidence).

### III. CONCLUSION

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the

18

Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff, Mohammed Saheed.

IT IS SO ORDERED.

Dated:   **October 26, 2016**                              **/s/ Sandra M. Snyder**
UNITED STATES MAGISTRATE JUDGE